UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GARY and CARYL LUIS, GARY A. MENTZ, MICHAEL J. and MERRI L. VITSE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RBC CAPITAL MARKETS, LLC,<br><br>Defendant. | Case No. 0:16-cv-03873 (SRN/DTS)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Daniel E. Gustafson, Daniel C. Hedlund, David A. Goodwin, and Eric S. Taubel, Gustafson Gluek PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, Gregg Martin Fishbein and Vernon J. Vander Weide, Lockridge Grindal Nauen PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, Scott D. Hirsch, Scarlett & Hirsch, P.A., 7301 West Palmetto Park Road, Suite 207a, Boca Raton, Florida 33433, for Plaintiffs.

Alex J. Kaplan and Andrew W. Stern, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Clifford M. Greene and Sybil L. Dunlop, Greene Espel PLLP, 222 South Ninth Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

**I.  INTRODUCTION**

This action arises from a series of investments that Defendant RBC Capital Markets, LLC ("RBC") made for Plaintiffs, involving security instruments called reverse controvertible notes, or RCNs. Before the Court is RBC's Motion to Dismiss the Amended Complaint [Doc. No. 22]. For the reasons set forth below, RBC's motion is denied.

## II. BACKGROUND

### A. Previous Related Litigation

In a related previous action, a similar set of plaintiffs (which included current plaintiffs Gary and Caryl Luis) filed a class-action Complaint pleading seven claims based in Minnesota state law, including common law negligence, breach of fiduciary duty, and breach of contract. These plaintiffs alleged that RBC engaged in a series of actions designed to hide the true risk of these products from investors, while pushing them on individuals who had expressly indicated an unwillingness to partake in options trading. *Luis v. RBC Capital Mkts., LLC*, No. 16–cv–00175, 2016 WL 6022909, at *2 (D. Minn. Oct. 13, 2016).

RBC moved the Court to dismiss the Complaint, arguing that it was precluded under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which precludes[1] maintenance—in either federal or state court—of any "covered class action" based on state law and alleging either (a) a "misrepresentation or omission of a material fact" in connection with the purchase or sale of a covered security, or (b) the use or employment of any "manipulative or deceptive device or contrivance" in connection with the purchase or sale of a covered security. 15 U.S.C. § 78bb)f(1); *see also* 15 U.S.C. § 77p(b). This Court granted RBC's motion and dismissed the complaint without prejudice. *Luis*, 2016 WL 6022909, at *8.

---

[1] Although SLUSA is frequently referred to as a preemption statute, it is more properly labeled a preclusion statute, as it "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 636 n.1 (2006).

### B. The Parties

Plaintiffs in this matter are five individuals who opened investment accounts with RBC. (Am. Compl. [Doc. No. 18] ¶¶ 7-9.) They commenced this action on behalf of themselves and the following putative class: "All persons and entities to whom Defendant sold [RCNs] from January 1, 2008 to the present, whose written instructions to RBC did not authorize selling put options."[2] (*Id.* at ¶ 22.) Plaintiffs estimate that the putative class may ultimately consist of "several thousand" individuals. (*Id.* at ¶ 25.)

Defendant RBC is a Minnesota limited liability company and a registered broker-dealer, which acted as the agent for the sale of the RCNs underlying this dispute. *Luis*, 2016 WL 6022909, at *1. RBC is a subsidiary of non-party Royal Bank of Canada, which issued the RCNs. *Id.*

### C. Plaintiffs' Claim

Plaintiffs' Amended Complaint makes a single claim for breach of contract. (Am. Compl. ¶¶ 35-40.) Plaintiffs allege that each member of the putative class contracted with RBC to give limited authority for trading in put options, which excluded "uncovered" or "naked" put options like those embedded in RCNs. (*Id.* ¶¶ 2-4.) Plaintiffs either completed an Options Agreement, authorizing trade in some options but not uncovered or naked put

---

[2] RCNs are a form of bond, consisting of a high-yield, short-term note of the issuer that is linked to the performance of an unrelated reference asset—generally a stock or basket of stocks. *Luis*, 2016 WL 6022909, at *1. RCNs thus contain two components—a debt instrument paying an above market interest rate (occasionally as high as 30%), and a derivative, in the form of a put option, that gives the issuer the right to repay principal to the investor in the form of a set amount of the underlying asset if the price of the underlying asset dips below a predetermined price. *Id.* It is this underlying option that gives RCNs

3

options, or, if they did not complete the Options Agreement, they authorized no options trading at all. (*Id.* at ¶ 4.) Despite these restrictions, Plaintiffs allege that RBC "caused Plaintiffs and other putative class members to issue/sell" RCNs to Royal Bank of Canada, RBC's parent company, which then sold the RCNs in the private market. (*Id.* at ¶ 19.) When the price of the reference assets for the RCNs fell below the predetermined value, Plaintiffs were forced to purchase the reference stocks and lose the value of their original notes. (*Id.* at ¶¶ 18-19.) Plaintiffs allege that they collectively lost nearly $280,000 on their $327,126.49 investment in RCNs. (*Id.* at ¶¶ 7-9.)

### D. RBC's Motion

In its Motion to Dismiss, RBC argues that Plaintiffs' Amended Complaint fails as a matter of law because it is precluded by SLUSA. (Mem. in Supp. of Def's. Mot. to Dismiss the Am. Class Action Compl. [Doc. No. 24] ("Def's. Mem.") at 14-18.)[3] In the alternative, RBC asserts that Plaintiffs do not plead sufficient facts to " 'state a claim to relief that is plausible on its face.' " (Def's. Mem. at 21 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).)

## III. DISCUSSION

### A. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is warranted where a plaintiff "fail[s] to state a claim upon which relief can be granted." When

---

greater risk than a traditional bond, as an investor may ultimately lose all of his or her principal investment and be left with only a depreciated asset in return. *Id.*
[3] All references to page numbers in this Opinion are those assigned by the CM/ECF system.

evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). While ordinarily only the facts alleged in the complaint are considered in deciding a motion to dismiss, "materials attached to the complaint as exhibits may be considered," *Id.*, as well as public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

### B. SLUSA

RBC argues that Plaintiffs' claim triggers SLUSA preclusion and therefore must be dismissed. In the Court's previous order in the related action, the Court outlined relevant portions of the legislative history of SLUSA. *See Luis*, 2016 WL 6022909, at *3. In essence, it appears that Congress passed SLUSA to close a loophole that allowed class-action litigants to avoid the heightened pleading standards for federal securities-fraud claims by filing suits under state law. *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006)).

In light of SLUSA's background, courts have interpreted its reach in an expansive fashion. The Supreme Court has declared that its passage reinforces Congress' resolve that "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Dabit*, 547 U.S. at 78. Likewise, the Eighth Circuit has noted that "SLUSA should be read with the 'presumption that Congress envisioned a broad construction.' " *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008) (quoting *Dabit*, 547 U.S. at 86). Thus, SLUSA has even been read to "pre-empt[ ] state-law class-action claims for which federal law provides no private

5

remedy." *Dabit*, 547 U.S. at 74.  Taken together, these and other cases suggest that courts should err on the side of finding in favor of preclusion under SLUSA when the issue is a close one.

The Eighth Circuit has developed a four-factor test for determining when a claim is precluded by SLUSA.  Under this test, a party seeking to invoke SLUSA's application must demonstrate the following:  (1) the action is a "covered class action"; (2) the action purports to be based on state law; (3) the action alleges that the defendant misrepresented or omitted a material fact (or used or employed a manipulative or deceptive device or contrivance); and (4) the action alleges that the defendant's misrepresentations or omissions of material fact were made "in connection with the purchase or sale of a covered security."  *See Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873, 876 (8th Cir. 2006); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002).

As in the previous related case, it is clear that the first two factors are met here.  *See Luis*, 2016 WL 6022909, at *3.  Under SLUSA, a "covered class action" is essentially any lawsuit "in which damages are sought on behalf of more than 50 people."  *Dabit*, 547 U.S. at 83; *see also* 15 U.S.C. §§ 77p(f)(2)(A), 78bb(f)(5)(B)(i).  Plaintiffs' Amended Complaint contends that the putative class may number "several thousand or more," and they seek damages on behalf of themselves and the putative class members.  (Am. Compl. at ¶¶ 21, 25.)  Thus, Plaintiffs' action is a "covered class action" for SLUSA purposes.  Likewise, because Plaintiffs' breach of contract claim sounds in Minnesota common law, this action "purports to be based on state law."  *Sofonia*, 465 F.3d at 876.

Briefly jumping ahead, the fourth factor of the SLUSA test requires allegations that RBC's misrepresentations or omissions were made "in connection with the purchase or sale of a covered security." *Sofonia*, 465 F.3d at 876. In its previous order in the related case, the Court concluded that RBC's alleged wrongdoing met this requirement. *Luis*, 2016 WL 6022909, at *5-7. Here, the circumstances underlying that determination are no different. The RCNs remain, under this Court's interpretation, a "covered security," *see id.*, and Plaintiffs do not currently dispute that RBC's alleged breach of contract was "in connection with" the purchase or sale of the RCNs. (*See* Pls'. Opp. to Def's. Mot. to Dismiss [Doc. No. 32] ("Pls'. Mem.").) Consequently, the Court's SLUSA analysis turns on the third element: whether Plaintiffs allege "that the defendant misrepresented or omitted a material fact (or used or employed a manipulative or deceptive device or contrivance)." *Sofonia*, 465 F.3d at 876.

In analyzing this requirement, the Eighth Circuit looks to the gravamen of the plaintiff's complaint. *See Dudek v. Prudential Secs., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002). Thus, a court does not "rely on the names of the causes of action that the plaintiff alleges. Instead [it] look[s] at the substance of the allegations, based on a fair reading. SLUSA preemption is based on the conduct alleged, not the words used to describe the conduct." *Kutten v. Bank of Am., N.A.*, 530 F.3d 669, 670-71 (8th Cir. 2008) (citations omitted).

The Eighth Circuit has barred claims that are facially unrelated to misrepresentations—such as those for breach of contract, breach of fiduciary duty, and negligence—when, at bottom, the essence of the complaint was an allegation of fraud. *See*

7

*id.*; *Dudek*, 295 F.3d 875. In *Kutten v. Bank of America, N.A.*, the plaintiffs filed a complaint alleging, *inter alia*, breach of contract and breach of fiduciary duty arising from Bank of America's practice of steering trust assets into a mutual fund substantially owned by the bank. 530 F.3d at 670. The plaintiffs stated that the bank breached its fiduciary duty by failing to "disclos[e] . . . certain information" and "failing to be candid." *Id.* at 671. Seeing no relevant distinction between misrepresentation or omission and "failing to be honest" or failing to disclose, the court affirmed the district court's dismissal of the complaint. *Id.*

The Eighth Circuit also affirmed a dismissal in *Dudek v. Prudential Securities, Inc.*, in which the plaintiffs alleged that Prudential Securities improperly marketed tax-deferred annuities to holders of accounts that already enjoyed tax-deferred status; the annuities thus provided a redundant benefit in exchange for higher fees. 295 F.3d at 877. Though the plaintiffs excised any mention of fraud, misrepresentation, and nondisclosure from their second complaint, the court noted that "the fact allegations in the two complaints are otherwise essentially the same. . . . [T]he essence of both complaints is the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plains, or by failing to disclose their unsuitability for such accounts." *Id.* at 879-80.

But just as plaintiffs cannot avoid SLUSA through artful pleading, defendants may not "recast contract claims as fraud claims by arguing that they 'really' involve deception or misrepresentation." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1116 (9th Cir. 2013); *accord Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 931 (7th Cir. 2017)

8

(stating that SLUSA will permit "genuine contract claims" to proceed, but affirming dismissal because the plaintiff "does not point to any explicit [contract] term that the Bank violated").

RBC argues that the gravamen of Plaintiffs' claim is misrepresentation, because "RBC is alleged to have falsely represented in an 'Options Client Agreement and Approval Form' . . . that, if so instructed, RBC would not 'cause' Plaintiffs to invest funds in RCNs." (Def's. Mem. at 15). But RBC's forced reading of Plaintiffs' claim collapses the distinction between breach of contract and fraud. *Cf. Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract. It does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform."). Under RBC's reasoning, any breach of contract claim would contain a misrepresentation, namely, that one party was misled to believe that the breaching party would actually perform the terms of the contract. Such a characterization improperly reads an intent to defraud into a cause of action that does not require it. Plaintiffs do not allege that RBC secretly intended to breach the contract when it was formed, and nothing about their allegations suggests that misrepresentation hides in the substance of the claim. Accordingly, Plaintiffs' claim is not based on "a misrepresentation or omission of a material fact." 15 U.S.C. § 78bb(f)(1)(A); *see Sofonia*, 465 F.3d at 876.

Nor does Plaintiffs' claim involve "a manipulative or deceptive device or contrivance." 15 U.S.C. § 78bb(f)(1)(B); *see Sofonia*, 465 F.3d at 876. RBC asserts that Plaintiffs characterize RCNs as deceptive devices, by alleging that they are typically tied

9

" 'to a volatile stock,' " which here exposed Plaintiffs to " 'substantial risk' " while RBC was guaranteed to make a profit. (Def's. Mem. at 18 (quoting Am. Compl. ¶¶ 6, 18).) But Plaintiffs do not dispute that RBC disclosed the risks associated with the RCNs, and their Amended Complaint does not allege otherwise. (*See* Pls'. Mem. at 22 ("Plaintiffs agree that RBC disclosed all facets of the RCN in its prospectuses and marketing and promotional materials concerning the embedded naked put options."); Am. Compl. ¶¶ 1-6, 17-20.) Further, investment companies are paid to facilitate investments with varying degrees of risk. The mere fact that RBC was paid commissions for the sales of the high-risk RCNs does not make its practices inherently deceptive.

In sum, Plaintiffs' claim is distinct from those that have been precluded under SLUSA: Plaintiffs allege a contract with a specific obligation on the part of RBC, and they allege that RBC violated that obligation, breaching the contract. (Am. Compl. ¶¶ 35-40.) Crucially, this obligation is not an amorphous "duty to be honest" like the one that doomed the claims in *Kutten* and *Dudek*. *Kutten*, 530 F.3d at 671; *Dudek*, 295 F.3d at 879-80. Rather, Plaintiffs allege a specific obligation that RBC not sell or purchase options without Plaintiffs' written authorization. (*See* Am. Compl. ¶¶ 4, 15, 37.) Accordingly, the Court finds that the third factor of the SLUSA test for preemption has not been met.

For all of the foregoing reasons, the Court finds that Plaintiffs' breach of contract claim is not precluded by SLUSA.

### C. Adequacy of Pleading

RBC asserts that Plaintiffs' allegations "sound in fraud," and that Plaintiffs must therefore meet the heightened pleading standards of Fed. R. Civ. P. 9(b). (Def's. Mem. at

10

21.) Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." But as the Court discussed above, Plaintiffs' claim does not allege fraud, either explicitly or implicitly. Thus, Plaintiffs need only meet the pleading standard of Fed. R. Civ. P. 8(a)(2).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need not contain "detailed factual allegations," it must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quotations and citation omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted).

RBC argues that Plaintiffs fail to meet either the 9(b) or the 8(a)(2) pleading standard, because the Amended Complaint does not "identify the RCNs they purchased, specify any recommendations made (or the circumstances in which RBC 'caused' Plaintiffs to purchase RCNs), instructions given, or the dates thereof." (Def's. Mem. at 21.) But as noted at the hearing on the instant motion, the Amended Complaint alleges that the contract with RBC prohibited the issuance of *any* RCNs without written authorization. (Hr'g Tr. of June 23, 2017 [Doc. No. 38], at 13-14; *see also* Am. Compl. ¶ 4.) Plaintiffs' allegations

sufficiently apprise RBC of the nature of the claim. To the extent that RBC requires additional specificity, it presumably has access to its own transaction records and account statements.

RBC further argues that Plaintiffs do not sufficiently allege the elements of a breach of contract claim. (Def's. Mem. at 22-25.) "In order to state a claim for breach of contract, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). RBC asserts that nothing in the Account Agreement or Options Agreement attached to Plaintiffs' Amended Complaint prohibits RBC from making investments in RCNs, and that the section of the Options Agreement to which Plaintiffs refer was a nonbinding "compliance approval." (Def's. Mem. at 22-23.) Further, RBC states that Plaintiffs did not successfully plead that they performed all conditions precedent of the contract. (*Id.* at 23-24.)

The Court disagrees. Plaintiffs sufficiently allege that: (1) they formed contracts with RBC that indicated the instructions and authorizations necessary for RBC to buy or sell options in Plaintiffs' accounts; (2) Plaintiffs fully performed their contractual obligations by paying RBC commissions or management fees; (3) RBC breached the parties' contracts by issuing naked put options without acquiring Plaintiffs' written authorizations, as required by the contracts; and (4) RBC's actions caused Plaintiffs to suffer damages. (Am. Compl. ¶¶ 35-40.) Certainly, RBC construes the parties' agreements differently, but Plaintiffs have plausibly alleged the elements of a breach of contract claim under Minnesota laws. *See*

*Park Nicollet*, 808 N.W.2d at 833. To the extent that RBC contends that Plaintiffs fail to plead the performance all conditions precedent, Plaintiffs' allegations sufficiently acknowledge their performance, (*see* Am. Compl. ¶ 38), and RBC is free to assert in its Answer any alleged deficiencies in this regard.

Therefore, assuming the facts in the complaint to be true and drawing all reasonable inferences from those facts in the light most favorable to Plaintiffs, as the Court is required to do here, *Morton*, 793 F.2d at 187, the Court concludes that Plaintiffs' factual allegations sufficiently plead the elements of a breach of contract claim under Minnesota law.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Dismiss [Doc. No. 22] is **DENIED**, as detailed herein.

Dated: September 18, 2017         **s/Susan Richard Nelson**
SUSAN RICHARD NELSON
United States District Judge